RECEIVED

JAN 22 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ndri Martial Diby Plaintiff,
vs.

Case No. 25-cv-03257-DLM

Baxter Credit Union (BCU) Defendants.
and FHLB of Chicago MPF

**AMENDED COMPLAINT AND SUPPLEMENTAL COMPLAINT WITH JURY DEMAND**

SCANNED
JAN 23 2026
U.S. DISTRICT COURT MPLS

## PRELIMINARY STATEMENT

1. This action for damages and declaratory relief is based on Defendants' pattern and practice of leaving Plaintiff's loss mitigation application, neither denying nor timely approving them; "dual tracking" by simultaneously pursuing foreclosure while Plaintiff's loss mitigation applications were pending; illegally threatening foreclosure and unjustifiably hindering Plaintiff from performing under the original mortgage loan agreement.

2. In enacting the dual tracking prohibitions in Regulation X, the Consumer Financial Protection Bureau recognized that "the potential harm to consumers of commencing a foreclosure proceeding before the consumer has had a reasonable opportunity to submit a loss mitigation application or while a complete loss mitigation application is pending is substantial." Federal Register /Vol. 78, No. 31 /Thursday, February 14, 2013 /Rules and Regulations 10819.

3. The CFPB recognizes that harms to borrowers from dual tracking include "confusion from receiving inconsistent and confusing foreclosure communications, while loss mitigation reviews are ongoing. ...Further, borrowers may be negatively impacted because borrowers are responsible for accruing foreclosure costs while an application for a loss mitigation option is under review. These cost burden already struggling borrowers and may impact the evaluation and ultimate outcome for a borrower for a loss mitigation option." Federal Register /Vol. 78, No. 31 /Thursday, February 14, 2013 /Rules and Regulations

10819.

4. The CFPB noted in 2013 that anecdotal evidence of the prevalence of dual-tracking abuse by servicers was accumulating. Federal Register /Vol. 78, No. 31 /Thursday, February 14, 2013 /Rules and Regulations 10815 n. 169.

5. The anti-dual tracking regulation "is necessary and appropriate to carry out the purpose under section 1021(a) of the Dodd-Frank Act of ensuring that markets for consumer financial products and services are fair, transparent, and competitive." 10822 Federal Register /Vol. 78, No. 31 /Thursday, February 14, 2013 /Rules and Regulations

6. The purpose of statutory dual tracking prohibitions "is to prevent mortgage servicers from having it both ways: a servicer cannot pursue mortgage foreclosure while also considering a borrower's timely submitted loan modification application." Mann v. Nationstar Mortg., LLC, No. 14-99 (MJD/HB) (D. Minn. 2015).

7. Defendants' actions and omissions violated the Real Estate Settlement Procedures Act and its implementing Regulation X, 12 C.F.R. Part 1024; the Minnesota Homeowner's Bill of Rights, Minn. § 582.043; the Minnesota Residential Mortgage Originator and Servicer Licensing Act, Minn. Stat. Ch 58; Defendants' duty of good faith and fair dealing; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ff.; tortious interference with prospective contractual relations; and unjust enrichment.

8. Defendants have put Plaintiff through an ongoing six months ordeal, with their home on the line.

9. Plaintiff (Ndri Martial Diby) brings this action against the above-named Defendants for (1) Failure to Determine Loss Mitigation Options, (2) Foreclosure Referral Without Acting on Loss Mitigation Application, (3) Dual Tracking, (4) Failure to Provide Compliant Notice of Incomplete Application and How to Make It Complete, (5) Loss Mitigation Procedures and Dual Tracking, (6) Violations of the Minnesota Residential Mortgage Originator and Servicer Licensing Act, (7) Failure to Determine Loss Mitigation Options, (8) Foreclosure Referral Without Acting on Loss Mitigation Application, (9) Violations of the Fair Debt Collection Practices Act, (10) Failure to Comply with Regulation X Continuity of Contact Requirements, (11) Intentional Infliction of Emotional Distress, (12) Bad Faith and Unfair Business Practices and (13) Breach of Contract, and makes claims for litigation fees and costs, as well as punitive damages.

**PARTIES**

10. Plaintiffs Ndri Martial Diby who reside in the city of Apple Valley, County of Dakota, State of Minnesota, at 15711 Fair Hill Way, Apple Valley, MN 55124. This property is owned by Ndri Martial Diby (Plaintiff). It has been his primary residence since 2017 and he is the "borrower" as that term is used in 12 C.F.R. § 1024.41 and defined by Minn, Stat., § 58.02, Subd.4, and "mortgagor" as that term is defined

in Minn. Stat. § 582.043.

11. Defendant Baxter Credit Union ("BCU") is a "servicer" as that term is defined in 12 C.F.R. § 1024.2(b) and by Minn. Stat. § 58.02, Subd. 20 12. As a mortgage servicer, BCU regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, and BCU is therefore a "'debt collector" as that term is defined by 15 U.S.C. § 1692a(6). BCU address is 425 Phillips Blvd Ewing, New Jersey, 08618.

12. BCU performs various servicing functions, and does not solely engage in enforcing security interests.

13. Defendant FHLB of Chicago MPF ("FHLB of Chicago") is owner and assignee of the loan.

14. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago selected, supervised, and otherwise controlled BCU actions; and BCU acted and keep acting with FHLB of Chicago's apparent authority. FHLB of Chicago address is 433 West Van Buren Street, Suite 501S, Chicago, IL 60607.

## FACTUAL ALLEGATIONS

### Events up to August 4, 2025

15. On June 12, 2025, Plaintiff requested to be considered for mortgage assistance program(s), Defendant BCU asked Plaintiff to return a completed application for loss mitigation assistance signed and dated July 19, 2025 (see Exhibit B).

16. Plaintiff uploaded loss mitigation documents directly to Defendant portal at loansolutioncenter.com on July 15, 2025, based on list of documents requirement provided by Defendant BCU.

17. On July 16, 2025 (see Exhibit D), Defendant BCU came back and asked for more documents (contribution letter + monthly family expenses).

17. On July 17, 2025 and July 18, 2025, those documents were uploaded as requested to BCU portal at loansolutioncenter.com, which completed our application loss mitigation (see Exhibit D).

18. On July 21, 2025, Defendant BCU sent a letter to Plaintiff stating the application (Loss Mitigation Application Package) has been completed as of July 19, 2025 (see Exhibit A).

19. BCU's July 21, 2025, letter promised, " We will not initiate a foreclosure action until your complete mortgage assistance package has been evaluated or until your deadline to respond to any loss mitigation offer extended to you has expired." (see Exhibit A)

20. In the meantime, Defendant initiated a foreclosure proceeding against Plaintiff on July 17, 2025 (see Exhibit C).

21. This action was taken even though Plaintiff have not received a notice pursuant to Regulation X, 12 C.F.R.§ 1024.41(c)(1)(ii) stating the outcome of Defendants evaluation of Plaintiff application; or prior to the time Plaintiff's appeals rights expired; or even though Plaintiff have not received a notice pursuant to

Regulation X, 12 C.F.R.§ 1024.41(h)(4) stating the outcome of their appeal of your denial of a loan modification option; or before Plaintiff had rejected the loss mitigation option you offered them.

22. Defendants began foreclosure proceedings prematurely while simultaneously working on Plaintiff's loss mitigation application, Dual tracking is prohibited by federal and Minnesota law under Regulation X 12 C.F.R. §§ 1024.41(b)(1) and (c)(1), and Minn. Stat. § 582.043.

23. Plaintiff submitted a complete loss mitigation application. This complete application was received by Defendant. However, the law firm (LOGS Legal Group LLP) representing the Defendant BCU in the foreclosure proceeding moved forward with foreclosure proceeding, and is collecting the full mortgage amount, and the law firm representing the Defendant BCU in the foreclosure proceeding asked the Plaintiff to respond to their collection inquiry letter by September 2nd, 2025 (see Exhibit C).

24. This action was taken even though Plaintiff have not received a notice pursuant to Regulation X, 12 C.F.R.§ 1024.41(c)(1)(ii) stating the outcome of your evaluation of their application; or prior to the time Plaintiff' appeals rights expired; or even though Plaintiff have not received a notice pursuant to Regulation X, 12 C.F.R.§ 1024.41(h)(4) stating the outcome of their appeal of your denial of a loan modification option; or before Plaintiff had rejected the loss mitigation option offered by Defendants, in violation of Regulation X, 12 C.F.R.§ 1024.41(g).

25. Defendants failed to Notify Plaintiff in writing of options before referring to foreclosure proceedings.

26. Defendants failed to evaluate the Plaintiff for all available loss mitigation options before a loan to an attorney for foreclosure proceedings.

27. Defendants cannot refer to a loan to an attorney for foreclosure proceedings if they have received a loss mitigation application unless: (1) Defendant has determined Plaintiff is not eligible for a loss mitigation. Or (2) Plaintiff has not accepted offer by deadline (at least 14 days).

28. FHLB of Chicago (the owner and assignee of the loan) is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago selected, supervised, and otherwise controlled BCU actions; and BCU acted and keep acting with FHLB of Chicago's apparent authority.

29. In a telephone call on July 22, 2025, a BCU representative confirmed that BCU started foreclosure proceeding against Plaintiff on 07/17/2025 and the foreclosure activity will continue while Plaintiff's application is being evaluated.

30. In a letter, BCU, through their law firm (LOGS Legal Group LLP), sent Plaintiff the first notice required by Minnesota law for a non-judicial foreclosure process.

31. In this letter BCU's law firm (LOGS Legal Group LLP), says "Baxter Credit Union referred your loan for foreclosure proceedings. We will use any information you give to enforce its rights under its mortgage/deed of trust which may include collection of the debt." (see Exhibit C).

32. FHLB of Chicago is owner and assignee of the loan, while BCU, as servicer, became Plaintiff's point

of contact

33. BCU acted as FHLB of Chicago's agent and under FHLB of Chicago's actual and apparent authority

34. FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU. That statement will likely have further evidentiary support after a reasonable opportunity for further investigation or discovery.

**Events August 1st, 2025 to Present**

35. In a telephone call on August 12, 2025, a law firm representative told Plaintiff that they initiated a foreclosure proceeding on 07/16/2025 and was put on hold on 07/21/2025 but contradicted themselves in a document (see Exhibit C) they sent to Plaintiff where Defendant referred the loan for foreclosure proceeding with a date of 07/23/2025.

36. In a telephone call on August 21, 2025, a BCU representative confirmed that the foreclosure proceeding against Plaintiff started on 07/17/2025 and was put on hold on 08/8/2025, the same day Defendants decided on Plaintiff application, and this was well documented into their system according to Defendant own agent.

37. BCU had simultaneously assigned multiple Single Point(s) of Contact. BCU failed to comply with Single Point of Contact.

38. BCU failed to comply with regulation X continuity of contact requirements because BCU has stopped all contact with Plaintiff.

39. Because few years ago Plaintiff signed up for BCU's online portal "paperless document", with the intent of being able to receive documents electronically through the portal. BCU's online portal failed to allow Plaintiff to access documents.

40. But because Plaintiff had signed up for BCU's online portal, BCU's system stopped mailing documents to Plaintiff's address. Therefore, until now. BCU did not deliver communications to Plaintiff either through the online portal or by mail to Plaintiff. BCU would not allow Plaintiff to use the online portal to access documents to keep up with the loss mitigation process.

41. BCU thereby failed to timely deliver important documents related to the loss mitigation process to Plaintiff either by mail or through their online portal.

42. on December 15, 2025, BCU lawyer delivered two documents dated back from August 27, 2025, (see Exhibit F) and October 7, 2025, (see Exhibit G) to Plaintiff via email, where BCU was requesting additional documents and saying Plaintiff application was incomplete. Because Plaintiff did not receive those documents and was not aware of BCU request, Plaintiff was not able to comply and submit or resubmit any documents BCU requested. BCU had repeatedly told Plaintiff that his loss mitigation application was complete (see Exhibit A). Despite having repeatedly acknowledged receipt of Plaintiff's completed loss

mitigation applications, BCU again insisted that Plaintiffs supply additional documents (see Exhibit F).

43. So far the last communication Plaintiff received from Defendant BCU was on August 19, 2025, by mail with a document dated back from August 8, 2025 (see Exhibit E).

44. BCU thereby failed to timely deliver any type of communications or documents to Plaintiff either by mail or through the online portal.

45. Defendant BCU violated Minn. Stat, § 58.13 by delaying the processing of Plaintiff's loss mitigation application and the closing of the modification loan.

46. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

47. Defendant BCU making false and misleading statements by saying they sent mail documents to Plaintiff address to request additional documents or information Plaintiff supposedly needed to submit to make their loss mitigation application complete.

48. Plaintiff never received the documents dated back from August 27, 2025, and October 7, 2025 by mail.

49. Defendant BCU failing to provide Plaintiff with any type of communications, documents and information about the next step of the loss mitigation process, with available loss mitigation options and actions Plaintiff was required to take, the status of Plaintiff's loss mitigation application, applicable loss mitigation deadlines.

50. As a result of Defendants' actions and omissions, Plaintiff have suffered actual damages, including without limitation out-of-pocket expenses and emotional distress.

51. At all times pertinent hereto, Defendants acted by and through their agents. servants, and/or employees who acted within the course and scope of their agency or employment, and under the direct supervision and control of Defendants.

## TRIAL BY JURY

52. Plaintiff is entitled to and hereby requests a trial by jury.

## CAUSES OF ACTION

### COUNT I

### 12 C.F.R. § 1024.41(c)

### FAILURE TO DETERMINE LOSS MITIGATION OPTIONS, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT

53.Defendant BCU violated 12 C.F.R. § 1024.41(c) in multiple ways, including without limitation by

failing within 30 days of receiving Plaintiff's completed loss mitigation applications to provide Plaintiff with notice in writing stating BCU's determination of which loss mitigation options, if any, BCU would offer to Plaintiff.

54.As a result of BCU's violations of § 1024.41(c), Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A).

55. BCU engaged in a pattern and practice of noncompliance, rendering it liable for statutory damages in the amount of $2,000 for each such failure to comply pursuant to 12 U.S.C. § 2605(f)(1)(B).

56. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to 12 U.S.C. § 2605(0(3).

57. BCU's violations of § 1024.41(c) also constitute violations of Minn. Stat § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

58. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

59. BCU is liable for punitive damages pursuant to Minn. Stat, § 58.18, Subd. 1(2).

60.Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat, § 58.18.

61. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT II**

**MINN. STAT. § 582.043, SUBD. 5**

**FAILURE TO DETERMINE LOSS MITIGATION OPTIONS, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

62. Defendant BCU violated Minn. Stat. § 582.043, Subd. 5 in multiple ways including without limitation by failing to notify Plaintiff in writing of available loss mitigation options, failing to exercise reasonable diligence, failing to evaluate Plaintiff's loss mitigation application, and failure to offer loss mitigation options for which Plaintiff was eligible.

63. As a result of BCU's violations of § 582.043, Subd. 5, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress.

64. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to Minn. Stat. § 582.043, Subd. 7(a).

65. BCU's violations of § 582.043, Subd. 5 also constitute violations of Minn. Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

66. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

67. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

68. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

69. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT III**

**12 C.F.R. § 1024.41(f)(2)**

**FORECLOSURE REFERRAL WITHOUT ACTING ON LOSS MITIGATION APPLICATION**

**BCU FOR ITS OWN CONDUCT AND**

**FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

70. Defendant BCU violated 12 C.F.R. § 1024.41(f)(2) in multiple ways, including without limitation by referring Plaintiff's account to a foreclosure attorney and, through that attorney, serving on Plaintiff the first notice for non-judicial foreclosure, after BCU had received Plaintiff's completed loss mitigation application, and without either denying Plaintiff's application or offering any loss mitigation option.

71. As a result of BCU's violations of § 1024.41(f)(2), Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f(1)(A).

72. BCU engaged in a pattern and practice of noncompliance, rendering it liable for statutory damages in the amount of $2,000 for each such failure to comply, pursuant to 12 U.S.C. § 2605(f)(1)(B).

73. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to 12 U.S.C. § 2605((3)

74. BCU's violations of § 1024.41(f)(2) also constitute violations of Minn Stat, § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

75. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

76. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd (2).

77. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

78. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT IV**

**MINN. STAT. § 582.043, SUBD. 6**

**DUAL TRACKING, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

79. Defendant BCU violated Minn, Stat, § 582.043, Subd. 6 in multiple ways, including without limitation by referring Plaintiff's account to a foreclosure attorney and, through that attorney, serving on Plaintiff the first notice for non-judicial foreclosure, after BCU had received Plaintiff's completed loss mitigation application, and without either denying Plaintiff application or offering any loss mitigation option.

80. As a result of BCU's violations of § 582.043, Subd. 6, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress.

81. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to Minn. Stat. § 582.043, Subd. 7(a).

82. BCU's violations of § 582.043, Subd 6 also constitute violations of Minn Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

83. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

84. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

85. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

86. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT V**

**12 C.F.R. § 1024.41(b)(2)**

**FAILURE TO PROVIDE COMPLIANT NOTICE OF INCOMPLETE APPLICATION AND HOW TO MAKE IT COMPLETE, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

87. Defendant BCU violated 12 C.F.R. § 1024.41(b)(2) in multiple ways, including without limitation by failing to specify the additional documents or information Plaintiff supposedly needed to submit to make their loss mitigation application complete and failing to state the date by which Plaintiff should submit such documents or information.

88. As a result of BCU's violations of § 1024.41(b)(2), Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f(1)(a).

89. BCU engaged in a pattern and practice of noncompliance, rendering it liable for statutory damages in the amount of $2,000 for each such failure to comply, pursuant to 12 U.S.C. § 2605(f)(1)(b).

90. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

91. BCU's violations of § 1024.41 (b)(2) also constitute violations of Minn Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

92. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

93. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd 1(2).

94. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18

95. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT VI**

**MINN. STAT. § 58.13**

**VIOLATIONS OF THE MINNESOTA RESIDENTIAL MORTGAGE ORIGINATOR AND SERVICER LICENSING ACT, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

96. Defendant BCU violated Minn. Stat. § 58.13 in multiple ways including without limitation by unreasonably delaying the processing of Plaintiff mortgage loan applications; violating the state and federal laws regulating residential mortgage loans identified elsewhere in this Complaint; and making false and misleading statements in connection with Plaintiff loan modification, including misleadingly threatening foreclosure when BCU was not legally entitled to foreclose.

97. As a result of BCU's violation(s) of § 58.13, Plaintiff has suffered actual damages not limited to out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages under Minn. Stat. § 58.18.

98. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

99. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd 1(2).

100. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

101. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

## COUNT VII

## 12 C.F.R. § 1024.41(c)

## FAILURE TO DETERMINE LOSS MITIGATION OPTIONS, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT

102. Defendant BCU violated 12 C.F.R. § 1024.41(c) in multiple ways, including without limitation by failing within 30 days of receiving Plaintiff completed loss mitigation applications to provide Plaintiff with notice in writing stating BCU's determination of which loss mitigation options, if any, BCU would offer to Plaintiff.

103. As a result of BCU's violations of § 1024.41 (c), Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1)(a).

104. BCU engaged in a pattern and practice of noncompliance, rendering it liable for statutory damages in the amount of $2,000 for each such failure to comply pursuant to 12 U.S.C. § 2605(f)(1)(B).

105. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

106. BCU's violations of § 1024.41(c) also constitute violations of Minn. Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

107. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

108. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

109. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

110. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

## COUNT VIII

## MINN. STAT. § 582.043, SUBD. 5

## FAILURE TO DETERMINE LOSS MITIGATION OPTIONS, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT

111. Defendant BCU violated Minn. Stat. § 582.043, Subd. 5 in multiple ways including without limitation by failing to notify Plaintiff in writing of available loss mitigation options, failing to exercise reasonable diligence, failing to evaluate Plaintiff's loss mitigation application, and failure to offer loss mitigation options for which Plaintiff was eligible.

112. As a result of BCU's violations of § 582.043, Subd. 5, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress.

114. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to Minn. Stat. § 582.043, Subd. 7(a).

115. BCU's violations of § 582.043, Subd. 5 also constitute violations of Minn. Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

116. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

117. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

118. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat, § 58.18.

119. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT IX**

**12 C.F.R. § 1024.41(f)(2)**

**FORECLOSURE REFERRAL WITHOUT ACTING ON LOSS MITIGATION APPLICATION.**

**BCU FOR ITS OWN CONDUCT AND**

**FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

120. Defendant BCU violated 12 C.F.R § 1024.41(f)(2) in multiple ways, including without limitation by referring Plaintiff's account to a foreclosure attorney and through that attorney, serving on Plaintiff the first notice for non-judicial foreclosure, after BCU had received Plaintiff's completed loss mitigation application, and without either denying Plaintiff's application or offering any loss mitigation option.

121. As a result of BCU's violations of § 1024.41 (f)(2), Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A).

122. BCU engaged in a pattern and practice of noncompliance, rendering it liable for statutory damages in the amount of $2,000 for each such failure to comply pursuant to 12 U.S.C. § 2605(f)(1)(B).

123. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

124. BCU's violations of § 1024.41(f)(2) also constitute violations of Minn. Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

125. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

126. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

127. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. 58.18.

128. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual

authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT X**

**MINN. STAT. § 582.043**

**LOSS MITIGATION PROCEDURES AND DUAL TRACKING, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

129. Defendant BCU violated Minn. Stat, § 582.043, Subds. 5 and 6 in multiple ways including without limitation by failing to give Plaintiff a reasonable amount of time to provide documents; and by referring Plaintiff's account to a foreclosure attorney and, through that attorney, serving on Plaintiff the first notice for non-judicial foreclosure, after BCU had received Plaintiff's completed loss mitigation application, and without either denying Plaintiff's application or offering any loss mitigation option.

130. As a result of BCU's violations of § 582.043, Subds. 5 and 6, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress.

131. Defendant BCU is liable for Plaintiff's costs and attorney's fees, pursuant to Minn. Stat. § 582.043. Subd. 7(a).

132. BCU's violations of § 582.043, Subds. 5 and 6 also constitute violations of Minn. Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

133. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

134. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

135. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat § 58.18.

136. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT XI**

**BREACH OF CONTRACT**

137. The Defendant fails to adhere to a loan modification agreement and restructure accordingly prior to initiating foreclosure proceedings. The law requires the Defendant to engage in a loan modification agreement with the homeowner prior to initiating foreclosure proceedings. Failure to do so will mean the Defendant is in breach of contract.

## COUNT XII

## BAD FAITH AND UNFAIR BUSINESS PRACTICES

138. The Defendants acted in bad faith by initiating foreclosure proceedings on the Plaintiff's home with the full knowledge that Plaintiff submitted a complete loss mitigation application. The complete application was received by Defendant while Defendant initiated foreclosure proceedings.

## COUNT XIII

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692c(a)(2), 1692e, 1692e(2), 1692e(5), 1692f(1), and 1692f(6).

## BCU FOR ITS OWN CONDUCT AND

## FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT

139. BCU's foregoing actions and omissions in connection with its attempts to collect the debt violated numerous and multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692c(a)(2), 1692e, 1692e(2), 1692e(5), 1692f(1). and 1692f6).

140. As a result of BCU's violations of the FDCPA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

141. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from BCU $1,000 in statutory damages and reasonable attorney's fees and costs.

142. BCU's violations of the FDCPA also constitute violations of Minn. Stat. § 58.13. Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans.'

143. BCU is liable for statutory damages pursuant to Minn. Stat. § 58.18.

144. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

145. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

146. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

## COUNT XIV

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692f(6). BCU FOR ITS OWN CONDUCT AND

## FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT

147. BCU's foregoing actions and omissions in connection with its attempts to collect the debt violated the

FDCPA, specifically 15 U.S.C. § 1692f(6).

148. As a result of BCU's violations of the FDCPA. Plaintiff has suffered actual damages not limited to out-of-pocket expenses and emotional distress. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

149. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from BCU $1,000 in statutory damages and reasonable attorney's fees and costs.

150. BCU's violations of the FDCPA also constitute violations of Minn. Stat. § 58.13 Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

151. BCU is liable for statutory damages pursuant to Minn. Stat, § 58.18.

152. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

153. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

154. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

**COUNT XV**

**12 C.F.R. § 1024.40**

**FAILURE TO COMPLY WITH REGULATION X CONTINUITY OF CONTACT REQUIREMENTS, BCU FOR ITS OWN CONDUCT AND FHLB OF CHICAGO FOR THE CONDUCT OF ITS AGENT**

155. Defendant BCU violated 12 C.F.R. § 1024.40 in multiple ways, including without limitation by failing to assign personnel to Plaintiff to provide Plaintiff with accurate information about available loss mitigation options, actions Plaintiff was required to take, the status of Plaintiff's loss mitigation applications, applicable loss mitigation deadlines, and the circumstances under which BCU might make a referral to foreclosure.

156. As a result of BCU's violations of § 1024.40, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses and emotional distress.

157. BCU's violations of § 1024.40 constitute violations of Minn. Stat. § 58.13, Subd. 1(8), which applies to "violations of any provision of any other applicable state or federal law regulating residential mortgage loans."

158. Plaintiff is entitled to recover their actual damages pursuant to Minn. Stat. § 58.18.

159. BCU is liable for statutory damages pursuant to Minn, Stat. § 58,18.

160. BCU is liable for punitive damages pursuant to Minn. Stat. § 58.18, Subd. 1(2).

161. Plaintiff is entitled to recover costs and attorney's fees from BCU pursuant to Minn. Stat. § 58.18.

162. FHLB of Chicago is liable for BCU conduct because BCU acted with FHLB of Chicago's actual authority; FHLB of Chicago was negligent in selecting, supervising, and otherwise controlling BCU actions; and BCU acted and kept acting with FHLB of Chicago's apparent authority.

## COUNT XVI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

163. Plaintiff re-alleges and incorporates herein by reference all previous paragraphs as though fully set forth herein.

164. The actions of Defendants, as set forth herein, have resulted in the Plaintiff potential loss of the Property. added expense of having to relocate if evicted, aside from being in default on a mortgage, as well as any legal expenses incurred with potential foreclosure lawsuits against Defendants. The Defendants intentionally bring a wrongful foreclosure proceeding that causes you emotional stress. The hassle of having to deal with and fight a wrongful foreclosure proceeding creates undue stress on Plaintiff and his family.

165. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that they would be unable to exercise legal rights in the Property.

166. Defendants are not acting in good faith while attempting to collect debt on the subject. Defendants committed the acts set forth above with complete utter and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

167. The Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression. Because of the Defendants' outrageous conduct, Plaintiff has been living under the constant emotional nightmare of losing the Property.

168. As a proximate cause of Defendants' conduct, Plaintiff has experienced many sleepless nights, severe depression, and lack of appetite.

169. Plaintiff is therefore entitled to punitive damages in an appropriate amount to punish Defendants and to deter others from engaging in similar conduct.

## REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiff be awarded judgment:

a.) Substantial damages for the pain, frustration, and emotional torment Defendants put Plaintiff through.

b.) Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B), Minn. Stat. § 58.18, and 15 U.S.C. § 1692k(a)(2).

c.) Reasonable attomey's fees and costs pursuant to 12 U.S.C. § 2605(f)(3); Minn Stat. § 582.043, Subd. 7(a); Minn. Stat. § 58.18; and 15 U.S.C. § 1692k(a)(3);

d.) Declaratory relief that Plaintiff does not owe attomey's fees, because the account was impermissibly referred to foreclosure, and do not owe late fees and other charges that accrued while Defendants impermissibly delayed processing Plaintiff's loss mitigation applications:

e.) Punitive damages pursuant to Minn. Stat. § 58.18, subd. 1(2);

f.) Punitive damages pursuant to Minn. Stat. §§ 549.191, and 549.20; and

g.) Such other and further relief as may be just and proper.

**EXHIBITS**

Exhibit A: Loss Mitigation Application Completed Letter

Exhibit B: Mortgage Assistance Program(s) Request Acknowledgement Letter and List Required Documents for Loss Mitigation Application

Exhibit C: Foreclosure Proceeding and Collection Inquiry Letter from Baxter Credit Union Lawyer

Exhibit D: Time Stamp from Baxter Credit Union (BCU) Loss mitigation portal at loansolutioncenter.com and Loss mitigation documents uploaded

Exhibit E: Mortgage Assistance Program Evaluation Summary

Exhibit F: New List Required Documents for Loss Mitigation Application

Exhibit G: Incomplete Application for Mortgage Assistance Program

Date: January 22, 2026

Signature of Plaintiff ______________________

Ndri Martial Diby
15711 Fair Hill Way
Apple Valley, MN, 55124
Number: 612 703 0419
*Plaintiff is self-represented*