**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Ndri Martial Diby,<br><br>Plaintiff,<br><br>v.<br><br>Baxter Credit Union and FHLB of Chicago MPF,<br><br>Defendants. | No. 25-cv-3257 (DLM)<br><br>**ORDER** |

Before the Court is Defendants Baxter Credit Union ("BCU") and FHLB of Chicago MPH ("FHLB")'s First Motion to Dismiss (Docs. 44 (Motion), 47 (Memorandum).)[1] Plaintiff Ndri Martial Diby opposes the Motion (Doc. 55 (Memorandum in Opposition).) For the reasons explained below, the Court grants Defendants' motion and dismisses Plaintiff's Amended Complaint (Doc. 41) in its entirety.

**BACKGROUND**

On August 14, 2025, Plaintiff Ndri Martial Diby, acting pro se, filed his initial complaint against Defendant Baxter Credit Union ("BCU"). (Doc. 1.) Mr. Diby filed the operative Amended Complaint by stipulation on January 22, 2025, adding Defendant FHLB. (Doc. 41.) The claims in the Amended Complaint stem from Defendants' alleged attempt to initiate a premature foreclosure on Mr. Diby's home mortgage. According to the

[1] On February 24, 2026, Defendant FHLB moved to join Defendant BCU's Motion to Dismiss, and the Court granted the motion. (Docs. 59 (Motion), 60 (Order).)

Amended Complaint, on June 12, 2025, Mr. Diby submitted a request to be considered for mortgage assistance. (*Id*. ¶ 15.) That same day, Mr. Diby alleges that BCU sent him a letter confirming receipt of his request and asking him to return a completed loss mitigation assistance application, along with certain financial documents, by July 19, 2025. (Docs. 41 ¶ 15; 41-1 at 3.) Mr. Diby claims that while his mortgage assistance request was still pending, on July 17, 2025, BCU "prematurely" initiated foreclosure proceedings against him, while "simultaneously" continuing work on his loss mitigation application. (Doc. 41 ¶ 22.)

Mr. Diby alleges that, through the above assertions, Defendants violated his rights in ways that give rise to 16 claims. Mr. Diby alleges that BCU and FHLB's actions violated numerous provisions of Regulation X, codified at 12 C.F.R. §§ 1024.41, including § 1024.41(c) (Counts I, VII), § 1024.41(f)(2) (Counts III, IX), § 1024.41(b)(2) (Count V) and § 1024.40 (Count XV); the Fair Debt Collections Practices Act ("FDCPA") codified at 15 U.S.C. § 1692 (Counts XIII, XIV); Minnesota Statutes § 582.043 subd. 5 (Counts II, IV, VIII, X), and § 58.13 (Count VI); as well as common law prohibitions on breach of contract (Count XI), bad faith and unfair business practices (Count XII), and intentional infliction of emotional distress (Count XVI). (*Id*. ¶¶ 53-169.) For relief, Mr. Diby seeks "substantial damages" for the emotional distress caused by Defendants' actions, statutory and punitive damages, reasonable attorney's fees[2] and costs, declaratory relief, and other relief the Court deems proper. (*Id*. at 16-17.)

[2] As noted above, Mr. Diby is acting pro se.

On January 28, 2026, Defendants moved to dismiss Mr. Diby's Amended Complaint for failure to state a claim and for judgment on the pleadings under Federal Rule of Civil Procedure 12. Alternatively, Defendants move for early summary judgment under Rule 56. Defendants first argue that this Court lacks jurisdiction over this matter because Mr. Diby fails to state a claim for relief under Regulation X or the FDCPA and thus, according to Defendants, he fails to plead a federal question to assert this Court's jurisdiction under 28 U.S.C. § 1331. Defendants also argue that Mr. Diby's state law claims must be dismissed because he fails to plead an amount in controversy sufficient to establish diversity jurisdiction under 28 U.S.C. § 1332, and that assert that the Court should decline to exercise its supplemental jurisdiction over Mr. Diby's state law claims under 28 U.S.C. § 1367(c). Finally, Defendants argue in the alternative that they are entitled to summary judgment because there is no genuine dispute of material fact concerning Defendants' compliance with the applicable laws and regulations.

Mr. Diby counters that his Amended Complaint should survive Defendants' motion and his claims should be permitted to proceed to discovery. (Doc. 55.) He contends that this Court possesses both federal question and diversity jurisdiction to hear his claims, and that he has properly alleged claims for relief.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A defendant may challenge the sufficiency of a complaint in several ways under Federal Rule of Civil Procedure 12. *See* Fed. R. Civ. P. 12. Two are relevant here.

Under Rule 12(b)(1), a defendant may challenge a federal court's subject-matter jurisdiction to decide an action or particular claims asserted in a complaint. *See* Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions may either challenge the complaint's claim of jurisdiction on its face or attack the underlying factual basis for jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to establish jurisdiction." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1026 (D. Minn. 2015) (citing *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001)). Courts should consider only the pleadings, and nothing more, when analyzing a facial challenge to jurisdiction. *Id.*

Another one of Rule 12's primary challenges, Rule 12(b)(6), requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'" *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1026 (D. Minn. 2015) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to Plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

Finally, the Court notes that Mr. Diby is acting pro se in this matter, meaning he is representing himself without help from a lawyer. When assessing the sufficiency of a complaint by a *pro se* plaintiff, courts should apply "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); citing Fed R. Civ. P. 8(f)). "If the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, a *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). Courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

## ANALYSIS

### I. THE COURT HAS JURISDICTION OVER MR. DIBY'S FEDERAL CLAIMS.

Defendants first argue that Mr. Diby's federal claims should be dismissed for lack of jurisdiction. Defendants contend that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Diby's federal claims under Regulation X and the FDCPA are implausible and fail to state a claim for relief. Mr. Diby objects and argues that he has raised federal claims sufficient to establish federal question jurisdiction under § 1331.

"Subject-matter jurisdiction under § 1331 is established when a well-pleaded complaint identifies a substantial federal question." *Erickson v. Sawyer*, No. 21-cv-2536 (ECT/ECW), 2022 WL 911966, at *2 (D. Minn. Mar. 29, 2022) (citing *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020)). Jurisdiction under § 1331 is *not* defeated for failure to state a claim. *See Hagans v. Lavine*, 415 U.S. 528, 542 (1974) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Failure to state a claim "calls for a judgment on the merits" and may result in dismissal, but that is distinct from "dismissal for want of jurisdiction." *Id*. That said, a complaint invoking federal-question jurisdiction may be dismissed for want of jurisdiction if the federal claim is insubstantial—that is, when the asserted claims are "essentially fictitious," "wholly insubstantial," or "obviously frivolous." *Grell v. Obama*, No. 15-mc-51 (JRT/BRT), 2015 WL 6445496, at *2 (D. Minn. Oct. 21, 2015) (quoting *Hagans*, 415 U.S. at 537)); *see also Erickson*, 2022 WL 911966, at *2.

Mr. Diby has sufficiently pleaded federal question jurisdiction under § 1331. Mr. Diby asserts claims under the Real Estate Settlement Procedures Act of 1974 ("RESPA") and the FDCPA, which are federal laws over which this Court has original jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). These claims are substantial, and not so obviously fictitious or frivolous that they fail to provide federal question jurisdiction. *Cf. Grell*, 2015 WL 6445496, at *2 (finding no federal question jurisdiction where plaintiff's claim that he was not subject to federal income tax was obviously frivolous). Defendants' argument that Mr. Diby's failure to state a claim under Rule 12(b)(6) vitiates this Court's jurisdiction under § 1331 thus conflates two distinct inquiries: whether Mr. Diby pleads a substantial federal question that allows the Court to decide Mr. Diby's claim under 28 U.S.C. § 1331, and whether that claim, as pleaded, can survive a motion to dismiss under Rule 12(b)(6). The Court has determined that subject-matter jurisdiction is proper under § 1331 because Mr. Diby's claims present a substantial federal question. Whether Mr. Diby pleads his federal claims with factual sufficiency to survive Defendants' motion to dismiss is another question, and subject of the remainder of this Order.

## II. THE COURT GRANTS DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6).

The Court next considers Defendants' arguments for dismissal under Rule 12(b)(6) for failure to state a claim. Mr. Diby's federal claims are considered under that standard and in turn.

**A. Mr. Diby Fails to State a Claim Under Regulation X.**

RESPA details the duties owed by loan servicers to borrowers and empowers the Consumer Financial Protection Bureau ("CFPB") to promulgate regulations to protect consumers and hold servicers to those regulations. *See* 12 U.S.C. § 2605(k)(1)(E). "The CFPB issued Regulation X, as codified at 12 C.F.R. § 1024.1 *et seq.*, to implement this Congressional mandate. This regulation includes provisions that limit the circumstances in which servicers can first notice or file foreclosures." *McHugh v. Bank of New York Mellon as Tr. for Certificate Holders of CWABS, Inc. Asset-Backed Certificates*, *Series 2007-8*, No. 21-cv-2174 (JRT/JFD), 2022 WL 4226208, at *2 (D. Minn. Sept. 13, 2022) (citing 12 C.F.R. § 1024.41(f)). Regulation X also details the obligations of mortgage servicers to notify borrowers of loss mitigation options, consider loss mitigation applications, and define the circumstances in which a servicer may foreclose after receipt of a loss mitigation application. *See generally* 12 C.F.R. § 1024.41. Relevant here, "RESPA prohibits a mortgage servicer from moving for a foreclosure judgment or from conducting a foreclosure sale until after a borrower's loss-mitigation process has been completed." *Cilien v. U.S. Bank Nat'l Ass'n*, 687 F. App'x 789, 791 (11th Cir. 2017).

Through his Amended Complaint, Mr. Diby brings several claims under various provisions of Regulation X, pleading actual damages for emotional distress.[3]

---

[3] The Court notes some uncertainty around the survival of Mr. Diby's damages claims. (*See* Doc. 41 ¶¶ 54, 71, 80, 88, 103, 121) (alleging out-of-pocket expenses and emotional distress damages).) "Proof of actual damages is an essential element of a claim under RESPA." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 718 (8th Cir. 2018). And "[t]o survive a motion to dismiss, a plaintiff must allege actual damages that were caused by the RESPA violation." *Zean v. Wells Fargo Bank*, No. 17-cv-3817 (JNE/HB),

**1. Section 1024.41(f)(2) (Counts III, IX).**

Mr. Diby alleges in his Amended Complaint that BCU violated 12 C.F.R. § 1024.41(f)(2) when it referred his loan to foreclosure on July 16, 2025 "after BCU had received [his] completed loss mitigation application, and without either denying [his] application or offering any loss mitigation option." (Doc. 41 ¶¶ 70, 120.) He alleges that FHLB is liable for BCU's conduct because BCU acted with FHLB's authority (*Id*. ¶¶ 78, 128.) Defendants argue that Mr. Diby's claim should be dismissed because they did not move for foreclosure judgment or initiate a foreclosure sale—and because referral alone does not violate Regulation X—and thus Mr. Diby fails to state a claim for relief.

Section 1024.41(f)(2) provides that "[i]f a borrower submits a complete loss mitigation application" during the pre-foreclosure review process or before a servicer has "made the first notice or filing" required for any foreclosure process, the servicer is temporarily prohibited from filing for foreclosure. 12 C.F.R. § 1024.41(f)(2); *see also Walker v. PHH Mortg. Corp.,* No. 22-cv-23276, 2023 WL 6621201, at *13 (S.D. Fla. Oct. 11, 2023). This foreclosure prohibition, which is inapplicable only in limited

---

2018 WL 11667703, at *5 (D. Minn. Apr. 12, 2018). The Eighth Circuit has not affirmatively held that emotional distress damages constitute actual damages under RESPA—but other Circuits have. *See Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896, 902 (11th Cir. 2018) (assuming that emotional-distress damages are recoverable under RESPA); *In Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) (same). Here, Mr. Diby has pleaded no actual damages under RESPA but has claimed damages for emotional distress and "out-of-pocket expenses." (*See generally* Doc. 41.) Absent controlling law, and because Mr. Diby's pleadings are otherwise insufficient, the Court declines to decide the sufficiency of damages here.

circumstances,[4] "prohibits foreclosure *referrals* in the event a *complete* loss mitigation application is received during the pre-foreclosure review period." *Todaro v. Ditech Fin. LLC*, No. 4:18-cv-00261-BCW, 2018 WL 11510960, at *3 (W.D. Mo. Oct. 26, 2018) (emphasis added).[5] A "complete loss mitigation application" is "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

Mr. Diby's pleadings show that BCU referred his loan to foreclosure *before* Mr. Diby submitted his complete loss mitigation application. He alleges that Defendant BCU received his completed loss mitigation application as of July 19, 2025. (Doc. 41 ¶ 18.) According to the Amended Complaint, Mr. Diby uploaded the loss mitigation documents to BCU's online portal on July 15, 2025, based on the list of documents that BCU informed him were outstanding. (*Id.* ¶ 16.) When BCU requested additional documents on July 16,

---

[4] Section 1024.41(f)(2)'s limited foreclosure prohibition does not apply if (1) "[t]he servicer has sent the borrower a notice . . . that the borrower is not eligible for any loss mitigation option" and provides additional information on appeal procedures; (2) "[t]he borrower rejects all loss mitigation options"; or (3) "[t]he borrower fails to perform under an agreement on a loss mitigation option." *Id.* § 1024.41(f)(2)(i)-(iii); *see also Walker*, 2023 WL 6621201, at *13.

[5] Notwithstanding § 1024.41(f)(2)'s language that referral is prohibited upon *submission* of a complete loss mitigation application, the caselaw evinces some ambiguity about whether § 1024.41(f)(2)'s proscription against foreclosure referral starts upon *submission* of the loss mitigation application, or *receipt* of the application by the loan servicer. *See e.g.*, *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 422 (6th Cir. 2022) (assuming Regulation X's referral prohibition began upon mortgager's *submission* of loss-mitigation application); *but see, e.g.*, *Todaro*, 2018 WL 11510960, at *3 (assuming foreclosure referral is prohibited upon *receipt* of loss mitigation application). Because the Court finds that Mr. Diby neither submitted, nor did BCU receive, a completed loss mitigation application at the time of referral, this ambiguity does not bear on the Court's decision.

2025, Mr. Diby uploaded those documents on July 17 and 18, 2025. (*Id.* ¶¶ 17, 17.[6]) According to the Amended Complaint, BCU referred the loan to foreclosure on July 17, 2025.[7] (*Id.* ¶ 20.) So, as pled, BCU referred Mr. Diby's loan to foreclosure on July 17, but had not received, nor had Mr. Diby submitted, a complete loss mitigation application by that time. Because § 1024.41(f)(2) prohibits referral to foreclosure only *after* submission of a completed loss mitigation application, the Court finds that Plaintiff has not alleged facts that state a claim for relief. *See Todaro*, 2018 WL 11510960, at *3 (dismissing claim made under § 1024.41(f)(2) because loan servicer did not receive a complete loss mitigation application before foreclosure referral). Mr. Diby's failure to satisfy the minimum statutory requirements of § 1024.41(f)(2) warrants dismissal under Rule 12(b)(6). *McHugh*, 2022 WL 4226208, at *3 ("A failure to meet the minimum statutory requirements warrants dismissal under Rule 12(b)(6)."). Accordingly, Counts III, and IX are dismissed against Defendants BCU and FHLB.

**2. Section 1024.41(c) (Counts I, VII).**

Next, Mr. Diby alleges that BCU violated Regulation X, 12 C.F.R. § 1024.41(c), by failing to provide him with written notice of his loss mitigation options within 30 days of receiving his completed loss mitigation application. (Doc. 41 ¶¶ 53, 102.) He alleges again that FHLB is liable for BCU's conduct because BCU acted with FHLB's authority. (*Id.* ¶ 61, 110.)

---

[6] Plaintiff's Amended Complaint includes two paragraphs numbered 17 which appear sequentially in the body of the document.

[7] BCU's Affidavit states that BCU referred the mortgage to foreclosure on July 16, 2025, not on July 17, 2025. (Doc. 45 ¶ 3.)

Section 1024.41(c) of Regulation X mandates that, within 30 days of receiving a complete loss mitigation application, a servicer shall evaluate the borrower for all loss mitigation options, and "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." 12 C.F.R. § 1024.41(c)(ii).

Here, as pleaded, Mr. Diby fails to meet the minimum statutory requirements necessary to state a claim under § 1024.41(c). According to the Amended Complaint, on July 21, 2025, BCU sent a letter to Mr. Diby informing him that his loss-mitigation application was complete as of July 19, 2025. (Doc. 41 ¶ 18.) On August 8, 2025, BCU sent a letter informing Mr. Diby that he was not eligible for "for loan modification or other foreclosure alternative." (Doc. 41-1 at 7.) In compliance with § 1024.41(c), that notice was in writing and advised Mr. Diby of his right to appeal the denial. (*Id.*); *see* 12 C.F.R. § 1024.41(c)(1)(ii). Because the facts as pleaded show that BCU sent Mr. Diby written notice of its determination of its review of his loss mitigation options on August 8, 2025—within 30 days of its receipt of his completed loss-mitigation application on July 19, 2025—the Court concludes that Mr. Diby has failed plead to the minimum statutory requirements to state a claim for relief under § 1024.41(c), and therefore Counts I and VII are dismissed against both Defendants BCU and FHLB under Rule 12(b)(6).

**3. Section 1024.41(b)(2) (Count V).**

Mr. Diby also alleges that BCU violated 12 C.F.R. § 1024.41(b)(2) by failing to specify which additional documents he needed to complete the loss mitigation application.

(Doc. 41 ¶ 87.) He alleges that FHLB is liable for BCU's conduct because BCU acted with FHLB's authority. (*Id.* ¶ 95.) Under § 1024.41(b)(2) loan servicers must:

> [n]otify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

*Id.* § 1024.41(b)(2)(i)(B).

Again, Mr. Diby fails to allege a plausible claim for relief. Mr. Diby alleges that he requested consideration for mortgage assistance on June 12, 2025. (Doc. 41 ¶ 15.) That same date, BCU "asked Plaintiff to return a completed application for loss mitigation assistance" by July 19, 2025. (Docs. 41 ¶ 15; 41-1 at 3.) That letter informed Mr. Diby which documents were required to complete his application. (Doc. 41-1 at 3.) According to the Amended Complaint, BCU communicated with Mr. Diby within five days of receiving his loss mitigation application, and informed him of the additional documents required to complete the application, consistent with the requirements of § 1024.41(b)(2). Accordingly, the Court concludes that Mr. Diby has failed to plead a plausible violation of § 1024.41(b)(2) against BCU or FHLB, and thus Count V is dismissed under Rule 12(b)(6) for failure to state a claim.

**4. Section 1024.40 (Count XV).**

In Count XV, Mr. Diby alleges that Defendant BCU, through its own conduct, and Defendant FHLB, through the conduct of its agent BCU, violated 12 C.F.R. § 1024.40. (Doc. 41 ¶¶ 155, 162.) Section 1024.40 concerns the continuity of contact between borrowers and servicer personnel, and provides that loan servicers should "maintain policies and procedures that are reasonably designed" to assign personnel to delinquent borrowers in a timely fashion, and make personnel available to delinquent borrowers. *See generally* 12 C.F.R. § 1024.40(a)-(b). Under the regulation, personnel should provide borrowers with accurate information about loss mitigation options, available evaluations, and statuses of their applications, and applicable information regarding foreclosure and deadlines with which borrowers must comply. *See id*.

Mr. Diby alleges that BCU violated this provision by failing to assign personnel to provide him with accurate information about available loss mitigation actions, inform him of next steps, the status of his application, applicable deadlines, and the circumstances under which BCU might refer him to foreclosure. (Doc. 41 ¶ 155.) But Mr. Diby alleges no facts beyond the bare recitation of the law to support his claim. Based on his Amended Complaint, Mr. Diby had telephone conversations with Defendant BCU's personnel on July 22, August 12, and August 21, 2025. (*See* Doc. 41 ¶¶ 29, 35, 36.) In those calls, BCU's representatives provided information to Mr. Diby regarding his loss mitigation application. (*See id*.) Mr. Diby does not allege that there was no one at BCU for him to contact, or that BCU personnel failed to provide information in compliance with § 1024.40. As pleaded, Mr. Diby fails to allege a plausible claim for relief against BCU under Rule 12(b)(6).

Because Mr. Diby has failed to state a claim against BCU, he has also failed to state a claim against FHLB. Accordingly Count XV is dismissed.

* * *

In sum, the Court finds that Mr. Diby has failed to state a claim for relief under Rule 12(b)(6) as to any asserted provision of Regulation X, and so his claims under Regulation X are dismissed. The question now before the Court is whether to dismiss Plaintiff's claims with or without prejudice. As recently stated by the Eighth Circuit, there is "a presumption that a dismissal under Rule 12(b)(6) is a judgment on the merits made with prejudice[.]" *Ellis v. Nike USA, Inc.*, 158 F.4th 932, 936 (8th Cir. 2025) (quoting *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)). But the Court retains "broad discretion" to dismiss without prejudice, so long as the order specifies as much. *Id.* Where a party fails to correct obvious errors in an operative complaint, or delays seeking amendment in the face of a dispositive motion, courts are within their discretion to dismiss the matter with prejudice. *Id.* at 936-37.

The Court dismisses Mr. Diby's Regulation X claims with prejudice because his claims fail to meet the minimum statutory requirements or allege sufficient facts to state a claim for relief. Mr. Diby filed his initial complaint a year ago, and then filed the operative Amended Complaint over six months ago. He has thus had ample time and opportunity to correct the deficiencies of his pleadings. But even so, Mr. Diby's claims are largely unsalvageable because additional facts would not alter the timeline of events Mr. Diby describes, and that timeline is central to the Court's analysis of his claims. Because Mr. Diby has not corrected obvious deficiencies in his Amended Complaint, and because, based

on the record he *cannot* do so, the Court dismisses Mr. Diby's Regulation X claims against BCU and FHLB with prejudice.

**B. Mr. Diby Fails to State a Claim Under the FDCPA (Counts XIII, XIV).**

Mr. Diby also raises claims under the FDCPA. Defendants argue that the FDCPA only regulates "debt collectors" and Mr. Diby has alleged no facts that Defendants are debt collectors. Defendants therefore argue that dismissal under Rule 12(b)(6) is appropriate. The Court agrees with Defendants.

The FDCPA regulates debt collection with the purpose of eliminating debt collectors' abusive collection practices. *See* 15 U.S.C. §§ 1692e ("[i]t is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors . . ."). To establish civil liability under the FDCPA, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; [and] (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Zelkowitz v. Avant, LLC*, No. 25-cv-850 (SRN/DLM), 2025 WL 3237906, at *2 (D. Minn. Nov. 20, 2025) (quoting *Mayfield v. Portfolio Recovery Assocs., LLC*, 553 F. Supp. 3d 676, 683 (D. Minn. 2021)).

The FDCPA distinguishes between debt collectors and creditors and generally does not regulate the latter. *Zelkowitz*, 2025 WL 3237906, at *3 ("The FDCPA . . . does not generally regulate creditors unless they use a false name in the course of collecting a debt.") (citing *Schmitt v. FMA All.*, 398 F.3d 995, 998 (8th Cir. 2005) (further citation omitted)). "[L]oan servicers that begin servicing prior to default are not debt collectors under the FDCPA." *Id.* (citing *Glover v. Tigani*, 666 F. Supp. 3d 896, 902 (D. Minn. 2023)); *see also*

*Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) ("[A] debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.") (emphasis added). To survive a motion to dismiss, a complaint must, as a threshold issue, allege facts that a defendant meets the FDCPA's definition of a "debt collector" or fail as a matter of law. *See Volden v. Innovative Fin. Sys., Inc*. 440 F.3d 947, 950 (8th Cir. 2006) ("[F]or if [defendant] is not a debt collector for purposes of the FDCPA, the statute does not apply and [plaintiff's] federal claims fail.").

Here, Mr. Diby does not allege that Defendants qualify as debt collectors, nor has Mr. Diby pleaded any facts alleging that Defendants meet the statutory definition of a debt collector. In fact, the Amended Complaint expressly identifies BCU as a "mortgage servicer." (Doc. 41 ¶ 11.) Because mortgage servicers are *not* debt collectors under the FDCPA, *see Motley*, 557 F. Supp. 2d at 1009, Mr. Diby fails to plausibly allege a claim under the FDCPA against BCU. The Court's analysis does not conclude there, however. Briefly, the Court considers BCU's counsel, "LOGS," whose letter to Mr. Diby identifies itself as a debt collector. (*See* Doc. 41-1 at 4 ("LOGS Legal Group LLP is a law firm which may be deemed a debt collector").) Notwithstanding the admittedly-confusing identification of LOGS as a debt collector, Mr. Diby's claims are still unavailing because "those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 477 (2019). In other words, LOGS's enforcement of nonjudicial foreclosure proceedings against Mr. Diby does not "transform" it into a debt collector subject to the

FDCPA. *Brian v. Gislason & Hunter LLP*, No. 20-cv-1859 (PAM/LIB), 2021 WL 101132, at *2 (D. Minn. Jan. 12, 2021) (quoting *Obdusky*, 586 U.S. at 480) ("when law firms or other security-interest enforcers carry out the steps required by state nonjudicial-foreclosure laws, the security-interest enforcers do not 'transform . . . into debt collector[s] subject to the main coverage of the Act.'"). LOGS's notation that it may be deemed a debt collector does not operate as any type of judicially-recognized admission about its status. Because Mr. Diby fails to allege facts showing that Defendants are debt collectors under the FDCPA, his claims under that statute fail as a matter of law.

As with Mr. Diby's Regulation X claims, the Court dismisses Mr. Diby's FDCPA claims with prejudice for the same reasons described above.

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Mr. Diby's State Law Claims.

The Court next considers Mr. Diby's state law claims under Minnesota Statutes §§ 582.043, and 58.13, and state common law claims for breach of contract, bad faith and unfair business practices, and intentional infliction of emotional distress ("IIED"). (Doc. 41 ¶¶ 62-69, 79-86, 96-101, 111-119, 129-136, 137-38, 163-69.) Defendants argue Plaintiff has failed to establish diversity jurisdiction, and the Court should decline to exercise its supplemental jurisdiction over these claims.

Absent the Court's discretionary exercise of supplemental jurisdiction over Mr. Diby's state law claims, the lack of any federal question means that diversity jurisdiction would be the only basis for this Court's jurisdiction. *Thomas v. Henry*, No. 19-cv-2930 (JRT/BRT), 2020 WL 620321, at *2 (D. Minn. Jan. 15, 2020), *R. & R.* adopted, 2020 WL

618412 (D. Minn. Feb. 10, 2020). Diversity jurisdiction under 28 U.S.C. § 1332 is proper "if the citizenship of each plaintiff is different from the citizenship of each defendant, and the amount in controversy exceeds $75,000.00." *Montgomery v. U.S. Bank N.A.,* No. 8:24-cv-502, 2026 WL 709879, at *6 (D. Neb. Mar. 13, 2026) (cleaned up) (citing 28 U.S.C. § 1332(a)). But here, Mr. Diby has pleaded insufficient facts to establish diversity jurisdiction. First, Mr. Diby has failed to plead more than $75,000 in damages because he claims no dollar value in damages at all. (*See generally* Doc. 41.) Second, aspects of the damages he claims are either unavailable to him (for instance, attorney's fees) or pleaded with insufficient detail to support the threshold $75,000 amount in controversy by invoking catchall damages categories with insufficient specificity (for instance, claims for "substantial damages," "statutory damages," "punitive damages"). (*See generally id.*) Third, Mr. Diby's attempt to correct this pleading error through his opposition memorandum—which asserts at least $100,000 at issue without any evidence—cannot stand in place of the Amended Complaint itself. (*See* Doc. 55 at 3); *see Al-Cast Mold & Pattern, Inc. v. Perception, Inc.*, 52 F. Supp. 2d 1081, 1083 (D. Minn. 1999) ("for the purposes of determining diversity jurisdiction, the amount in controversy should also be ascertained solely from the face of the plaintiff's complaint."); *Euge v. Trantina*, 422 F.2d 1070, 1073 (8th Cir. 1970) ("Where the amount in controversy is properly challenged, the burden is on the plaintiff to establish the jurisdictional amount by competent proof. If this burden is not met, the complaint must be dismissed for want of jurisdiction.") (cleaned up). Mr. Diby failed to plead the jurisdictional amount in controversy on the face of his Amended Complaint, and still failed to establish the jurisdictional amount upon

Defendants' challenge. Accordingly, the Court concludes that Mr. Diby has failed to adequately plead diversity jurisdiction.

That leaves the question of whether the Court ought to exercise supplemental jurisdiction over Mr. Diby's state law claims. "Under 28 U.S.C. § 1367, in any civil action in which the district courts have original jurisdiction, they shall also have supplemental jurisdiction over all other claims so related to the claims in the original jurisdiction that they form part of the same case or controversy." *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000). But federal courts may decline to exercise supplemental jurisdiction over such a claim when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) ("A federal district court has discretion to decline jurisdiction if it has 'dismissed all claims over which it has original jurisdiction.'"). The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire*, 236 F.3d at 420 (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990)). Here, Mr. Diby has raised federal claims under Regulation X and the FDCPA, which the Court has now dismissed. His remaining claims are all state law claims. Because the Court has dismissed Mr. Diby's federal claims, it declines to exercise supplemental jurisdiction over Mr. Diby's remaining state law claims.

With no jurisdiction over Mr. Diby's state law claims, dismissal without prejudice is appropriate. *See Ferguson v. Cnty. of Clearwater*, No. 23-cv-0546 (PJS/LIB), 2024 WL 1255505, at *6 (D. Minn. Mar. 25, 2024) (declining to exercise supplemental jurisdiction and dismissing state law claims without prejudice); *see also Asher v. Ninneman*, No. 19-

cv-3002 (WMW/KMM), 2020 WL 6083554, at *1 (D. Minn. Oct. 15, 2020) (explaining that claims dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) are "necessarily dismissed without prejudice") (internal citations omitted); *Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011) (affirming dismissal for lack of subject-matter jurisdiction but modifying the dismissal to be without prejudice).[8]

## ORDER

Accordingly, based on all the files, records, and proceedings above, **IT IS ORDERED** that:

1. Defendants Baxter Credit Union and FHLB of Chicago MPF's Motion to Dismiss (Doc. 44) is **GRANTED**;

2. Plaintiff Martial Ndri Diby's Amended Complaint (Doc. 41) is **DISMISSED** as follows:

    a. Counts I, III, V, VII, IX, XIII, XIV, XV are **DISMISSED WITH PREJUDICE**; and

    b. Counts II, IV, VI, VIII, X, XI, XII, XVI are **DISMISSED WITHOUT PREJUDICE**.

Date: August 18, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

[8] Defendants also move the Court, in the alternative, for early summary judgment under Rule 56 because, they argue, there is no genuine dispute of material fact concerning Defendants' compliance with the applicable laws and regulations. Because the Court has dismissed Mr. Diby's claims under Rule 12(b)(6), it declines to reach Defendants' alternative arguments for dismissal under Rule 56.